UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Case No. 1:10-cr-310-4-RCL |
| ERIC SCURRY, | |
| *Defendant.* | |

## MEMORANDUM OPINION

Defendant Eric Scurry filed a motion under 28 U.S.C. § 2255 to vacate his sentence, arguing that his counsel provided ineffective assistance in the lead up to trial and throughout his plea negotiations with the government.  Having held an evidentiary hearing on this motion, the Court holds that the ineffective assistance of counsel claim fails because Mr. Scurry cannot prove that he was prejudiced by his counsel's actions.  The motion will therefore be denied.

### I.    BACKGROUND

Because of the long history of this case, the background section proceeds by outlining the facts of the underlying case, the events surrounding Mr. Scurry's plea agreement, and the subsequent proceedings thereafter.

### A.  Original Investigation and Wiretaps

In 2009, the FBI began investigating suspected narcotics distribution at an apartment complex in southeast Washington, D.C.  *United States v. Scurry* (*Scurry II*), 992 F.3d 1060, 1062 (D.C. Cir. 2021).  Suspecting that Mr. Scurry was dealing crack cocaine, the FBI focused its investigation on him and obtained a wiretap on his cell phone after gathering evidence against him from cooperating witnesses, physical surveillance, and recorded conversations, among other things.  *Id.*  Evidence from Mr. Scurry's wiretap led to several subsequent wiretaps—namely, on

1

the phones of Terrance Hudson, then Robert Savoy, then James Brown, and finally Jerome Johnson. *Id.* But the court orders authorizing the Hudson and Johnson wiretaps did not include the name of the high-level Justice Department official who approved the application, thus setting up the suppression issue at the center of these post-conviction proceedings.

Mr. Scurry was arrested and charged in late 2010, as were most of his co-defendants. *Id.* The government alleged that the men conspired, from November 2006 to November 2010, to distribute and possess with intent to distribute five kilograms or more of cocaine and 280 grams or more of crack cocaine. Superseding Indictment at 2, ECF No. 115. The government also charged Mr. Scurry with multiple counts of distributing crack cocaine, distributing crack cocaine within 1,000 feet of a school, and unlawfully using a communication facility to aid and abet drug distribution. *Id.* at 3–8.

## B. Pretrial Proceedings

Mr. Scurry initially entered a not-guilty plea to all charges against him. As the case progressed, each defendant moved to suppress evidence from their own wiretaps, and several defendants (including Mr. Scurry) moved to join co-defendants' motions to suppress. ECF Nos. 59, 168. Specifically, Mr. Scurry joined the motions of Hudson, Johnson, and Brown, seeking to suppress evidence from these co-defendants' wiretaps on the basis that they lacked the name of the high-level Justice Department official who approved the underlying applications. ECF No. 168. This Court granted Mr. Scurry's procedural joinder motion. ECF No. 185. But the Court denied the suppression motions. ECF No. 186.

Throughout most of the pretrial proceedings, Mr. Scurry was represented by Christopher Davis, but on the eve of trial, Mary Davis, Mr. Davis's spouse and law partner, stepped in as co-counsel to represent Mr. Scurry while Mr. Davis attended to other court matters. *Scurry II*, 992

2

F.3d at 1063.  When Ms. Davis suggested that she might be standing in for Mr. Davis during opening arguments, this Court advised her that "trial takes precedence," and "[i]f [the other judge] doesn't believe it, I'll tell him myself."  *Id.* (quoting Tr. at 7–8, *United States v. Savoy*, No. 10-cr-00310 (D.D.C. Sept. 7, 2012), ECF No. 347).  Despite this admonishment, on the day that Mr. Scurry's trial was set to start, Ms. Davis appeared on behalf of her absent husband.  *Id.*

On the morning of trial, Mr. Scurry was still considering a plea offer with only Ms. Davis as counsel to advise him.  *Id.*  In the end, he pleaded guilty to two counts: (1) conspiracy to distribute and possess with intent to distribute 280 grams or more of crack cocaine, and (2) conspiracy to launder money gained from the drug distribution scheme.  Scurry Plea Agreement at 1–2, ECF No. 231; *see also* Superseding Information as to Eric Scurry, ECF No. 227.  As explained below, the quality of this representation became the basis for the ineffective assistance claim now before this Court.

Mr. Scurry's plea agreement included the right to appeal this Court's order denying his own motion to suppress, explicitly stating that Mr. Scurry could withdraw his plea "[o]nly in the event of a reversal of that decision."  *Id.* at 9–10.  His co-defendants likewise pleaded guilty, but unlike Mr. Scurry's plea agreement, several of theirs expressly preserved a broader right to appeal the denial of each other's suppression motions.  *See* Johnson Plea Agreement at 9–10, ECF No. 213 (reserving the right to appeal an order denying one of Savoy's motions to suppress wiretap evidence); James Plea Agreement at 9–10, ECF No. 217 (same); Hudson Plea Agreement at 10, ECF No. 224 (same).

On the same day that he signed the plea agreement, Mr. Scurry appeared in court and pleaded guilty alongside his co-defendants.  The Court reviewed the charges with Mr. Scurry and the co-defendants.  ECF No. 343 at 19–24.  Each counsel then gave "a brief description of the

agreement" their client had signed, at the request of the Court. *Id.* at 24. Whereas several other counsel mentioned provisions retaining the right to appeal, Ms. Davis did not. *Id.* at 27–31. The Court accepted Mr. Scurry's guilty plea upon receiving his assent. *Id.* at 31–33. On November 30, 2012, Mr. Scurry was sentenced to twelve years of imprisonment, followed by five years of supervised release—the sentence stipulated to in his Rule 11(c) plea offer. Judgment, ECF No. 289; Scurry Plea Agreement at 2, ECF No. 231.

### C. Direct Appeal

Following sentencing, Mr. Scurry appealed the denial of his suppression motion, which was consolidated with his co-defendants' appeals. *See generally United States v. Scurry* (*Scurry I*), No. 12-3104 (D.C. Cir).

Ms. Davis initially represented Mr. Scurry, but Mr. Scurry asked that she be removed as counsel based on a conflict of interest, alleging that she had coerced him into pleading guilty and that Mr. Davis, her husband, had provided ineffective assistance. Motion at 4, *Scurry I*, No. 12-3104 (D.C. Cir. March 27, 2013), ECF No. 1427990. Several days later, Ms. Davis moved to withdraw as Mr. Scurry's counsel. Motion, *Scurry I*, No. 12-3104 (D.C. Cir. Mar. 29, 2013), ECF No. 1428070. The D.C. Circuit granted these motions and appointed Dennis Hart as new appellate counsel. Per Curiam Order, *Scurry I*, No. 12-3104 (D.C. Cir. July 25, 2013), ECF No. 1448381; Clerk's Order, *Scurry I*, No. 12-3104 (D.C. Cir. August 13, 2013), ECF No. 1451304. Mr. Hart did not raise the ineffective assistance of counsel claim that Mr. Scurry now raises in the present § 2255 motion.

The Circuit ultimately reversed this Court's denial of the suppression motion as to the wiretaps of Hudson's and Johnson's phones. *United States v. Scurry* (*Scurry I*), 821 F.3d 1, 5 (D.C. Cir. 2016). The federal wiretap statute, Title III of the Omnibus Crime Control and Safe

Streets Act of 1968, requires that an order approving a wiretap include, among other things, "the identity of the high-level Justice Department official who approved the application," and since the orders authorizing the Hudson and Johnson wiretaps did not include the name of that official, the D.C. Circuit held that they were invalid on their face. *Id.* at 7–12 (citing 18 U.S.C. § 2518(1)(a)). This meant that these wiretaps, along with whatever evidence was derived from them, should have been suppressed. *Id.* at 13–14. The Circuit affirmed the rest of this Court's ruling, including the denial of Mr. Scurry's own suppression motion. *Id.* at 16, 18.

### D. First § 2255 Petition

On remand, the government concluded that the evidence from the Hudson wiretap had led to the Savoy wiretap, which had led to the Brown and Johnson wiretaps. *Scurry II*, 992 F.3d at 1064. Because these defendants retained the right to withdraw their plea agreements if this evidence was suppressed, the government moved to dismiss the charges against Hudson, Savoy, Brown, and Johnson. *Id.* This left only Mr. Scurry, who would not benefit from those suppression decisions under the terms of his plea agreement. *Id.*

Nevertheless, Mr. Scurry filed a *pro se* motion to dismiss the indictment. *Id.* Ms. Davis, who had been monitoring the electronic docket, noticed Mr. Scurry's filing and on her own initiative reached out to Mr. Scurry to offer her assistance with his motion. *Id.* Even though Ms. Davis had withdrawn from representing Mr. Scurry on his direct appeal due to a conflict of interest, which had involved allegations that she had coerced him into pleading guilty, she failed to obtain a conflict waiver from Mr. Scurry for this representation. *Id.* Ms. Davis also failed to advise Mr. Scurry "that the common and likely only legally viable way to challenge his conviction and sentence at this procedural stage would be to press an ineffective assistance of counsel claim against herself and/or her husband." *Id.*

Scurry filed a *pro se* motion asking this Court to re-appoint Mr. and Ms. Davis to represent him because they had "indicated that they may supplement [his] motion," Motion to Appoint Counsel at 1, ECF No. 384, and this Court granted his motion, appointing the Davises as counsel under the Criminal Justice Act, 18 U.S.C. § 3006A, 12/29/2016 Order, ECF No. 385.

Several months later, on March 3, 2017, they filed a § 2255 motion to vacate Mr. Scurry's plea, arguing that he had not voluntarily or intelligently agreed to it since he was induced to plead guilty by evidence that was subsequently suppressed.  ECF No. 387 at 4–8.  Specifically, this motion argued that the plea was not knowing and voluntary because the 280 grams of crack that he admitted to conspiring to distribute as part of his plea was the amount for which the entire conspiracy was responsible, and that amount was determined from the wiretaps of his co-defendants' cell phones.  *Id.* at 7–8.  This Court denied the motion, along with Mr. Scurry's *pro se* motion to dismiss the indictment, partly on the grounds that his plea was valid because he had understood the charges against him and "the mere fact that evidence was suppressed as to others does not render his plea involuntary."  *United States v. Scurry*, 318 F. Supp. 3d 365, 369 (D.D.C. 2018).

Scurry filed a timely *pro se* notice of appeal as to his § 2255 motion, and the Circuit granted his motion for a certificate of appealability, referring the case to the Office of the Federal Public Defender.  *Scurry II*, 992 F.3d at 1065.  The Circuit subsequently appointed Ms. Davis as appellate counsel under the Criminal Justice Act.  *Id.*

On appeal, Ms. Davis again pressed the argument that Mr. Scurry's plea was induced by illegally obtained evidence, meaning his agreement was therefore not voluntary.  *Id*.  The Circuit ultimately held that "by pleading guilty, [Mr.] Scurry specifically waived any challenge to the government's evidence other than his expressly reserved challenge to the district court's denial of

6

his own motion to suppress evidence from the wiretap on his telephone." *Scurry II*, 992 F.3d at 1066. As Supreme Court and Circuit precedent squarely held, "wrongly judging the admissibility of evidence does not render a plea involuntary as long as counsel provided reasonably competent advice in making that decision." *Id.* at 1067 (citing *McMann v. Richardson*, 397 U.S. 759, 769–70 (1970)).

But the Circuit proceeded to address an argument that Mr. Scurry did not raise—namely, the ineffectiveness of Mr. and Ms. Davises' assistance during the plea negotiations. *Id.* at 1067–68. As the Circuit explained, a central feature of the caselaw governing the voluntariness of plea agreements "is the foundational presumption that the decision to plead guilty rested on competent legal advice from counsel." *Id.* at 1067. In other words, "while reasonable but mistaken evidentiary judgments themselves do not render a plea involuntary, ineffective assistance of counsel in evaluating the strength of the government's case, the risks of going to trial, or the consequences of pleading guilty can invalidate a plea." *Id.* (citing *McMann*, 397 U.S. at 770–71). And because Mr. and Ms. Davises' potential ineffectiveness was likely Mr. Scurry's only viable basis for post-conviction relief, Ms. Davis faced a conflict of interest throughout her post-conviction representation of Mr. Scurry that she had failed to properly resolve. *Id.* at 1067–68. This failure was particularly stark since Ms. Davis stated at oral argument that she did not remember that this conflict of interest existed, despite Mr. Scurry having claimed at the outset of his direct appeal that she had coerced him into agreeing to the plea. *Id.* at 1068. Ultimately, the Circuit concluded that "by affirmatively intervening in [Mr.] Scurry's collateral proceedings despite the conflict and not pressing the ineffective assistance claim, [Ms.] Davis seemingly 'ma[d]e a choice advancing [her] own interest at the expense of [her] client's.'" *Id.* at 1069 (quoting *United States v. Taylor*, 139 F.3d 924, 930 (D.C. Cir. 1998)).

While the Circuit did not decide the merits of whether Mr. Scurry received constitutionally ineffective assistance, it did observe that Ms. Davis made several statements at oral argument that "were not inconsistent with that claim." *Id.* at 1068. In particular, the Circuit flagged that even though she appeared "as counsel for the first day of trial, she admitted that she had not reviewed important evidence in the case" and yet nonetheless "represented [Mr.] Scurry regarding the plea." *Id.* And in the end, this plea did not preserve Mr. Scurry's "ability to challenge" this Court's "failure to suppress his co-defendants' wiretap evidence or condition his plea on the result of any challenge to their suppression orders, as some of his former co-defendants' plea agreements did." *Id.*

"Given all of those facts," the Circuit held that "the record incontrovertibly establishe[d] that the conflict of interest impaired" Ms. Davis's representation of Mr. Scurry throughout the post-conviction proceedings. *Id.* at 1068–69. And because appointing counsel who labors under an apparent conflict of interest "constitutes an abuse of discretion" under the Criminal Justice Act, the Circuit concluded that Mr. Scurry was owed a fresh attempt to file a § 2255 petition with unconflicted counsel. *Id.* at 1069–70 (citing 18 U.S.C. § 3006A(a)(2)(B)).

Following the Circuit's decision, the Office of Professional Responsibility within the Department of Justice referred this matter to the D.C. Bar's Disciplinary Counsel, which opened an investigation into Ms. Davis's post-conviction representation of Mr. Scurry. *See* Petition for Negotiated Discipline, Defense Exhibit (DE) 20. In the negotiated disposition of this investigation, she and the Disciplinary Counsel stipulated to the following misconduct: Ms. Davis had violated Rule 1.7(b)(4) of the D.C. Rules of Professional Conduct by representing Mr. Scurry, without his informed consent, "in his § 2255 proceeding and subsequent appeal notwithstanding that her professional judgment was or reasonably could have been adversely affected by her own interests";

8

further, she had also violated Rule 8.4(d) of the D.C. Rules of Professional Conduct by engaging "in conduct that seriously interfered with the administration of justice." *Id.* at 8–9. The agreed-upon sanction was a 30-day suspension of her Bar license with probationary terms including CLE requirements. *Id.* at 9. Ms. Davis was also removed from the list of attorneys eligible for appointment under the Criminal Justice Act within the D.C. Circuit. Rough Tr. of 1/15/2027 Evidentiary Hr'g at 145:24–146:08.

### E.  Second § 2255 Petition

After this case again returned from the Circuit, new counsel was appointed to represent Mr. Scurry. ECF No. 423. In February 2022, with the assistance of his new attorney, Mr. Scurry filed his second § 2255 petition, which is now before the Court. *See* Scurry's Second § 2255 Mot., ECF No. 424. At the same time, Mr. Scurry requested that the Court hold a hearing on his motion. *Id.* This motion became ripe in April 2023. *See* Gov't Opp'n, ECF No. 436; Scurry's Reply, ECF No. 442. In March 2024, Mr. Scurry renewed his request for an evidentiary hearing to help resolve the § 2255 petition. ECF No. 446.

In August 2025, the Court granted the motion, instructing the parties that the evidentiary hearing would focus on two inquiries. Order, ECF No. 449. First, the Court observed that it "need[ed] more information on exactly what evidence regarding the conspiracy charge specifically existed against Mr. Scurry on his codefendants' wiretaps, versus on his own wiretap" to resolve whether the government would have been able to bring a conspiracy case against Mr. Scurry had he successfully joined his co-defendants' motions to suppress on appeal. *Id.* at 2 (emphasis omitted). Second, the Court indicated that it "also need[ed] more information regarding Mr. Scurry's sentencing exposure on his non-conspiracy charges" since the government opposed his § 2255 petition on the basis "that this sentencing exposure, even without the conspiracy charge,

9

would have induced Mr. Scurry to plead in any event." *Id.* at 3.  The evidentiary hearing was held on January 15–16, 2026.

## II.    LEGAL STANDARDS

### A.  Relief Under 28 U.S.C. § 2255

A court may vacate, set aside, or correct a sentence if the sentence was imposed "in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a).  The constitutional standard for the validity of the plea agreement turns on "whether the plea represent[ed] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)).  "A plea is not voluntary or intelligent, and therefore unconstitutional, if the advice given by defense counsel on which the defendant relied in entering the plea falls below the level of reasonable competence" required by the Sixth Amendment.  *In re Sealed Case*, 670 F.3d 1296, 1303 (D.C. Cir. 2011) (cleaned up). Consequently, "a defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel' was not 'within the range of competence demanded of attorneys in criminal cases.'"  *United States v. Rubio*, 677 F.3d 1257, 1261–62 (D.C. Cir. 2012) (quoting *Hill*, 474 U.S. at 56).

### B.  *Strickland* Standard

To prevail on a claim of ineffective assistance of counsel, a petitioner "must prove both incompetence and prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  This means that he must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms" and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).

If either prong fails, the petitioner cannot make out an ineffectiveness claim. *Id.* at 700. The Court's evaluation of counsel's actions "must be highly deferential," and is assessed under the circumstances present at the time of representation without the benefit of hindsight. *Id.* at 689. As for the prejudice prong, a "reasonable probability" is one that is "sufficient to undermine confidence in the outcome." *Id.* at 694. This means that the petitioner must show there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (cleaned up). In the plea context, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Missouri v. Frye*, 566 U.S. 134, 148 (2012) (affirming that the *Hill* standard continues to govern in "cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial").

While the petitioner need not show that counsel's deficient conduct "more likely than not" caused him to plead guilty rather than proceed to trial, he must establish that it was "reasonably likely" that he would have gone to trial but for counsel's errors. *Strickland*, 466 U.S. at 693–96. Such "predictions of the outcome at a possible trial . . . should be made objectively, without regard for the 'idiosyncrasies of the particular decisionmaker.'" *Hill*, 474 U.S. at 59–60 (quoting *Strickland*, 466 U.S. at 695); *see also Roe v. Flores-Ortega*, 528 U.S. 470, 486 (2000) (observing that "the prejudice inquiry" turns on whether "a rational defendant [would] insist on going to trial"). Put differently, while a petitioner need not show that he would have prevailed had he gone to trial, he must prove that choosing to do so would have been a "rational decision" based on "a realistic assessment" of the case. *United States v. Hanson*, 339 F.3d 983, 991 (D.C. Cir. 2003).

### III.    DISCUSSION

Mr. Scurry maintains that he would have insisted on proceeding to trial had he known that the evidence on his co-defendants' wiretaps could not be used against him. The government,

however, argues that a rational decisionmaker in his position would not have refused his plea offer considering the non-suppressible evidence against him and his sentencing exposure if convicted. The Court agrees that, even assuming ineffectiveness, the prejudice requirement is not met here.

While Mr. Scurry ultimately pleaded guilty to conspiracy to distribute and possess with intent to distribute 280 grams or more of cocaine base in violation of 18 U.S.C. §§ 841, 846, he had been charged with the lesser-included offense of conspiracy to distribute 28 grams or more of crack cocaine, along with 19 additional counts that were charged against him individually. Superseding Indictment at 2–8, ECF No. 115. These included seven counts of unlawful distribution of a detectable amount of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C) (Counts 2, 4, 6, 8, 11, 13, and 16); seven counts of unlawful distribution of cocaine base within 1,000 feet of a school in violation of 21 U.S.C. § 860(a) (Counts 3, 5, 7, 9, 12, 14, and 17); and five counts of unlawfully using a communication facility in violation of 21 U.S.C. § 843(b) (Counts 10, 15, 18, 19, and 20).

As a result of his plea, the additional charges against him were dismissed. ECF No. 231. But they are relevant for present purposes since, in assessing a defendant's sentencing exposure had he proceeded to trial, a court must "consider not only the count[s] to which the defendant pled guilty, but also the other counts he would have faced." *In re Sealed Case*, 488 F.3d 1011, 1017 (D.C. Cir. 2007) (citing *United States v. McCoy*, 215 F.3d 102, 106–07 (D.C. Cir. 2000)).

Whether Mr. Scurry can prove prejudice turns on a reasonable person's estimation of the evidence against him (excluding the evidence on his co-defendants' wiretaps) and the sentencing exposure he faced had he been convicted. Given the evidence against Mr. Scurry, there is vanishingly little chance that he would have been acquitted on all counts. At the bare minimum, a reasonable person in his position would have anticipated being convicted on at least one

substantive count of distribution, which would have carried a Guidelines range of 262 months to 327 months. Mr. Scurry's Rule 11(c) plea agreement, which stipulated to a sentence of only 144 months of imprisonment, therefore offered him considerably favorable terms despite not including the right to withdraw his appeal should his co-defendants' wiretaps be suppressed. Put simply, Mr. Scurry cannot make out the prejudice prong of his ineffectiveness claim because his sentencing exposure as to even a single substantive count of distributing cocaine base would have induced a rational decisionmaker to accept the plea that he ultimately entered.[1]

## A. Evidence

Simply put, the evidence against Mr. Scurry as to the individual charges of distribution was overwhelming. In total, the government collected evidence across at least 10 controlled buys. Government Exhibits (GEs) 1–2. Recall that this evidence ultimately led to the wiretap on Mr. Scurry's phone and that the Circuit ultimately upheld this Court's decision to deny suppression of that particular wiretap. *Scurry I*, 821 F.3d at 16–18. The evidence collected from the controlled buys included multiple videos, surveillance photos, FBI-302 and FBI-1023 forms (contemporaneous reports prepared by special agents memorializing their actions and those of cooperating witnesses during the controlled buys), as well as DEA-7 forms (lab reports that verify the type and quantity of drugs seized). GEs 3–20.

---

[1] In his closing arguments at the evidentiary hearing, Mr. Scurry's counsel argued that no showing of prejudice is necessary when a defendant can show that his attorney labored under a conflict of interest that affected the adequacy of the representation—citing *United States v. Gray-Burriss*, 791 F.3d 50, 62 (D.C. Cir. 2015), and *Cuyler v. Sullivan*, 446 U.S. 335, 349 (1980), for support. Though this may be true were the Court considering the adequacy of Ms. Davis's representation during the first round of post-conviction proceedings, this argument fails for present purposes since Mr. Scurry has not argued that any conflict of interest existed when Ms. Davis advised him to enter into the plea agreement. Mr. Scurry cites no authority suggesting that Ms. Davis's ill-advised representation during the post-conviction proceedings alleviates his burden to prove that he was prejudiced by her ineffectiveness during the plea negotiations. Of course, Mr. Scurry could have been prejudiced by Ms. Davis's post-conviction representation since she predictably did not raise her own ineffectiveness in his first § 2255 petition. But the Circuit remedied the conflict of interest, as best it could, by remanding the case for appointment of new counsel.

Consider, for example, the evidence stemming from the controlled buy on December 10, 2009. At the evidentiary hearing, the government played a dash camera video recorded on this date, which shows Mr. Scurry selling what appears to be narcotics to someone who appears to be a cooperator. GE 24 at 16:58–19:28. The FBI-1023 and DEA-7 forms for the December 10, 2009 sale corroborate that the buyer was in fact a cooperator and the substance sold was in fact crack cocaine. GEs 8, 17. Given this evidence, there is little chance that Mr. Scurry would have avoided conviction as to this sale.

The remaining nine sales were supported by roughly the same evidence, with perhaps one important exception. At the evidentiary hearing, Mr. Scurry's counsel raised the issue of whether one of the government's cooperating witnesses misidentified Mr. Scurry during the controlled buy on January 6, 2010. In a *Brady* disclosure sent to Mr. Davis on August 9, 2012, the government relayed that the cooperator who had initially identified Mr. Scurry as the person who sold the crack cocaine may have stolen $50 of government funds and later stated that Mr. Scurry had directed the cooperator to another man to complete the sale. DE 7. The cooperator indicated that Mr. Scurry "did not want to directly deal . . . during the hand-to-hand transaction." *Id.* The video of this sale, which was recorded on a camera attached to the cooperator's clothing, is not inconsistent with this latter version of events. DE 10. In this video, Mr. Scurry opens the door for the cooperator and appears to gesture towards another man before heading up a flight of stairs, at which point the cooperator pulls up a zipper, thereby blocking the view of the camera. *Id.* at 7:50–8:04.

It is true that the *Brady* disclosure corroborated by the video is potentially exculpatory evidence as to the January 6, 2010 sale, and it is true the cooperator's conflicting version of events raises potential credibility concerns. But even if Mr. Scurry was acquitted on one or more of the substantive counts of distribution, it is not reasonably likely that he would have been acquitted as

14

to all of them.  Put another way, even excluding the evidence gathered from his co-defendants' wiretaps, it is exceedingly likely that Mr. Scurry would have been convicted on several of the non-conspiracy counts.  And as explained in the next section, Mr. Scurry's sentencing exposure even as to one single substantive count would have induced a rational decisionmaker in his position to accept the plea agreement that he entered into.

### B.  Sentencing

Mr. Scurry faced steep consequence had he been convicted of even a single substantive count of distributing a measurable amount of crack cocaine.  While the typical statutory penalty range for this crime is zero to 20 years of imprisonment, *see* 21 U.S.C. § 841(c), Mr. Scurry faced an enhanced statutory maximum of 30 years due to his prior felony drug convictions, *see id.* § 841(b)(1)(C); *see also* ECF No. 65 (detailing Mr. Scurry's prior convictions, as required by 21 U.S.C. § 851).  And his Guidelines range recommended a sentence much closer to the maximum than the minimum.

To begin, he had a criminal history category of VI—the highest category—which qualified him as a so-called "career offender" under § 4B1.1 of the 2012 Sentencing Guidelines Manual.  Because § 4B1.1 would have applied and the applicable statutory maximum was 30 years, his offense level for a single substantive count of distribution would have been 34.  In 2012, a criminal history category of VI plus an offense level of 34 yielded a Guidelines range of 262 to 327 months of imprisonment.[2]  U.S. SENT'G GUIDELINES MANUAL, SENTENCING TABLE, CH. 5 PT. A (U.S.

---

[2] This range reflects the fact that, had Mr. Scurry gone to trial, he would have lost the benefit of the offense level reduction for acceptance of responsibility.  In the hypothetical where Mr. Scurry pleaded guilty to the individual distribution charges alone, this adjustment would have likely lowered his range from 262 to 327 months down to 210 to 262 months.  Note that the negotiated sentence of 144 months was still 66 months (5.5 years) shorter than the bottom of the latter Guidelines range.  *See United States v. Smoot*, 918 F.3d 163, 168–69 (D.C. Cir. 2019) (holding that prejudice was partially mitigated by the fact that the defendant had earned a three-point reduction to his offense level by pleading guilty, lowering his Guideline range from 100 to 125 months to 77 to 96 months).

SENT'G COMM'N 2012).  Even the lower end of this range stands in stark contrast to the 144-month sentence stipulated to in Mr. Scurry's Rule 11(c) plea agreement.

Recognizing this reality, Mr. Scurry points out that, in 2012, the United States Sentencing Commission reported that only 42.9% of defendants in drug trafficking cases nationwide received within-Guidelines-range sentences, and less than 1% of such defendants received above-Guidelines sentences—meaning that about 56% received below-Guidelines sentences.  DE 25.[3] But while the Court does not disagree that Mr. Scurry may well have received a below-Guidelines sentence had he gone to trial, this possibility does not, without more, establish prejudice.  Even assuming a below-Guidelines sentence—on top of the assumption that Mr. Scurry would not have been convicted of the conspiracy charges—it strikes the Court as exceedingly unlikely that Mr. Scurry would have received a sentence that was nearly 10 years shorter than the bottom of the Guidelines range.  Yet that is what he received by pleading guilty.  Given the overwhelming likelihood that he would have been convicted on at least one of the substantive counts of distribution had he gone to trial, any rational decisionmaker in his position would have elected to plead guilty in exchange for a stipulated 144 months of imprisonment, particularly because of the anchoring effect that his Guidelines range would have had at sentencing.

\* \* \*

Put simply, the considerable evidence against Mr. Scurry as to the individual counts of distribution alone, combined with the steep sentencing range recommended by the Guidelines had he gone to trial, leads the Court to conclude that the prejudice prong of his *Strickland* claim is not met.  *See, e.g., United States v. Smoot*, 918 F.3d 163, 168–69 (D.C. Cir. 2019) (holding that the

---

[3] Of the 135 recorded federal defendants in drug trafficking cases sentenced in D.C. in 2012, 29.6% received within-Guidelines sentences and 1.5% received above-Guidelines sentences.  DE 25.

defendant "ha[d] failed to show a reasonable probability that, had counsel been better prepared, he would not have pled guilty and would have insisted on going to trial," "[g]iven the overwhelming evidence against him and the 'somewhat favorable' terms of the plea agreement" (quoting *United States v. Hunt*, 560 F. App'x 2, 3–4 (D.C. Cir. 2014)); *United States v. Farley*, 72 F.3d 158, 165 (D.C. Cir. 1995) (observing "the government had a relatively straightforward and compelling case" and the defendant would have faced a "stiff sentence" under the Guidelines and a mandatory minimum sentence had he been convicted after trial); *United States v. Pollard*, 602 F. Supp. 2d 165, 170–71 (D.D.C. 2009) (holding that the strength of the evidence and the Guidelines range of at least 262 to 327 months had the defendant lost at trial, compared to the 144-month sentence she received under the plea agreement, "weigh against any reasonable probability that but for [counsel's] alleged errors, [the defendant] would not have accepted a plea and proceeded to trial"); *United States v. Ayers*, 938 F. Supp. 2d 108, 115 (D.D.C. 2013) (pointing out that "the plea agreement benefited defendant by ultimately resulting in a sentence lower than the sentence to which defendant would otherwise have been exposed"). For this reason, Mr. Scurry's § 2255 motion will be denied.

## IV.    CERTIFICATE OF APPEALABILITY

A petitioner must obtain a certificate of appealability before pursuing any appeal from a final order in a § 2255 proceeding. *See* 28 U.S.C. § 2255(c)(1)(B). When the denial of a § 2255 motion is based on the merits of the claims in the motion, a district court should issue a certificate of appealability only when the appeal presents a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2255(c)(2). The petitioner must show that reasonable jurists could debate whether the issues should have been resolved differently or are "adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483 (2000) (quotation omitted).

17

While the Court stands by its analysis as to the prejudice prong of Mr. Scurry's *Strickland* claim, this decision does not preclude any ground for reasonable disagreement. Because this Court's bottom line boils down to a judgment call as to whether Mr. Scurry would have received a sentence substantially below the Guidelines range by the undersigned Judge had he been convicted of even a single substantive count of distribution at trial, the Court finds that a certificate of appealability is warranted and will issue.

## V.    CONCLUSION

For the reasons above, Mr. Scurry's motion to vacate his sentence will be **DENIED**.

Date: ___May 5, 2026___

_____
Royce C. Lamberth
United States District Judge

18